United States District Court
Southern District of Texas

**ENTERED**

July 18, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and STATE FARM COUNTY MUTUAL INSURANCE COMPANY OF TEXAS, | § § § § § | |
| *Plaintiffs*, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:20-cv-2606 |
| COMPLETE PAIN SOLUTIONS, LLC, *et al*, | § § § | |
| Defendants. | § § § | |

### ORDER

State Farm Mutual Automobile Insurance Company and State Farm County Mutual Insurance Company of Texas (collectively State Farm or Plaintiffs) filed this lawsuit against Dr. Alj Florence Sparrow ("Sparrow"), Dr. See Loony Chin ("Chin") (collectively "Defendant Doctors"), Complete Pain Solutions, PLLC ("Clinic") and MMRI Holdco Rollover LLC ("MMRI") (collectively "Defendants"). The Plaintiffs allege that Defendants engaged in a fraudulent scheme involving predetermined and medically unnecessary medical treatment as well as the creation of fraudulent records and bills used by their patients who were claimants in automobile insurance claims. Defendants denied these allegations. Plaintiffs filed suit alleging three causes of action: 1) two Racketeer Influenced and Corrupt Organization ("RICO") claims under 18 U.S.C. § 1962(c) and (d) against the Defendant Doctors; and 2) one Texas common law claim for "money made and received" against all Defendants.

The complaint was based upon an investigation of almost 500 individual patients of the Clinic. Due to the size of this cohort and the expense involved to all parties in thoroughly and

completely performing discovery for a 450-plus patient base, the Court ordered phased discovery to determine if there was enough facts to support the Plaintiffs' claims. The Plaintiffs chose approximately 50 patients on which to proceed in earnest and over time this number has been reduced to a "test group" of 27. The parties have investigated both the medical history of these parties and the related financial billing history related to these patients. Throughout this discovery period, the Plaintiffs have remained stalwart in their belief in the validity of their claims while the Defendants have been just as adamant that there is no evidence of any wrongdoing that rises to a level above surmise and speculation.

To test this position, Defendants have filed this Joint Motion for Summary Judgment (Doc. No. 129) to which Plaintiffs have responded (Doc. No. 146). Defendants have filed a joint reply (Doc. No. 156) and with the Court's permission, Plaintiffs' have filed a sur-reply (Doc. No. 165). Also pending and pertinent to the substantive motions are the Defendants' objections to the Plaintiffs' summary judgment evidence in which they literally object to almost every shred of evidence on which Plaintiffs rely (Doc. No. 155). The Plaintiffs' have responded in opposition to that motion (Doc. No. 166) and the Defendants have filed a joint reply (Doc. No 168) to that response.

### I. General Objections to Plaintiffs' Summary Judgment Evidence

While the Court understands the need to object to improperly presented summary judgment evidence, there are certain objections that the Court need not address specifically. Initially, the Defendants object in a number of places based upon the rule of optional completeness. This quite frankly is not a worthwhile objection at this stage in the proceeding. While it can be quite important at trial to ensure that a complete picture is placed before the fact finder, at the summary

2

judgment stage, the opposing party need only attach the omitted portions to their reply to get the Court's attention.

Secondly, the Defendants' complain about undesignated witnesses acting as declarants in the Plaintiffs' response. Again, at this stage, the Court is more focused on the content of the proof. While it may need to address the alleged failure of the Plaintiffs to properly disclose an individual in a later hearing, the Court will not blanketly disregard those declarations. It will consider the more specific objections concerning their content if they affect the Court's ruling.

More specifically, Defendants object to the declaration of Jared Heck, Plaintiffs' counsel, in that it goes well beyond the normal declaration to prove up certain discovery obtained in the case. This Court sustains these objections. The Court will not consider those paragraphs that purport to include what truly appears to be expert medical testimony and conclusions well beyond the knowledge of an experienced medical malpractice lawyer or even a doctor.

Next, the Court addresses two overlapping points the Defendants have made — both of which have merit. The first point concerns the fact that some exhibits or subparts of exhibits are not referenced anywhere in Plaintiffs' response. It is well settled that a court is under no duty to sift through hundreds, or in this case, thousands of pages of exhibits to find evidence to support a parties' position. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Nevertheless, the failure to refer to an exhibit does not render the exhibit objectionable, it merely means the Court may or may not consider it based upon whether the Court finds the summary judgment evidence sufficient or finds it at all. The party proffering the exhibit is running the risk that the Court might not locate the evidence upon which that party relies. It is not the Court's error if a party elects not to be specific. This same rule applies when a party refers the Court to an exhibit that is lengthy and does not expressly supply the Court with a page cite. That violates this Court's rules, and more

3

importantly, the Fifth Circuit's case law. Nevertheless, it does not make the exhibit improper—it just makes the brief poorly drafted, and it may ultimately cause that party to lose the motion. It is not the duty of the Court to search the record for specific evidence that may raise a fact issue.

Finally, the Court would be remiss if it did not point out that the Plaintiffs' approach in citing evidence is, at best, unsatisfactory. The Court will set out one example. In addressing the Defendants' argument that reliance was lacking, the response, in part, reads:

> Lastly, there is ample evidence from which a jury could conclude Plaintiffs relied on the bills and records submitted by Defendants in deciding to settle and pay claims, and thus their injury was caused by those bills and records. Defendants argue Plaintiffs did "not actually rely" on their bills because there is no testimony claims handlers consider a variety of information in deciding whether to pay or deny claims (Mot. 18-19) But the fact claim specialists considered multiple factors in their evaluation of claims does not mean they did not *rely* on Defendants' bills and records in settlement claims for particular amounts. <u>There is substantial evidence of this reliance.</u> (Ex. 61, 286; 14-25; 287; 1-15; Exs. 1-7 .) <u>Thus, while reliance is not an element of Plaintiffs' RICO claims, there is more than enough evidence for the jury to conclude Plaintiffs relied on Defendants' bills and records and such bills and records caused Plaintiffs' injuries.</u> *See Sigma*, 2017 WL 11698455, at \*6.

(Doc. No. 146, p. 32) (emphasis added).

Most advocates would tell the Court what the controverting evidence is, or at least give the Court a hint. Here, for some reason counsel decided not to; and, thus, even with page citations, the Court must somehow figure out what the controverting evidence is. When one follows the only specifically cited "evidence," there is a deposition excerpt that consists of four questions— all of which were leading and to which Defendants rightfully objected. While the answers to these questions did stand for the proposition for which they were cited, for this Court to consider them, the Plaintiffs must hope this Court makes the determination that the evidence is capable of being presented in an admissible form, despite the manner in which it was elicited. The remainder of the reference is to seven different exhibits from which apparently the Court is free to draw

4

whatever conclusions it may or may not. This is a shoddy and haphazard approach. Most importantly, it needlessly taxes the very limited judicial resources available to this Court. Plus, this approach to responding to a summary judgment motion is far from effective.

## II. Legal Standard

Summary judgment is warranted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.: Fed. R. Civ. R. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321-25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255). The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable fact finder could find in favor of the nonmoving party. *Id.* at 248. It is, as set out above, the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III. Analysis

As noted above, Plaintiffs have pleaded three causes of action: two RICO claims based on federal law and a money had and received claim based on Texas common law. Defendants, in their motion, have contested all three. They attack the RICO claims on four different bases: 1) that Plaintiffs lack standing (primarily grounded in lack of causation and reliance); 2) that Plaintiffs have no evidence that the Defendant Doctors controlled the affairs of the Clinic; 3) that Plaintiffs have no evidence of mail fraud (because there was no fraudulent conduct and no intent to deceive); and 4) that Plaintiffs have no evidence of a conspiracy—hence no grounds for a claim under § 1962(d). With regard to the common law claim for "money had and received," the Defendants argue that it fails for three reasons: 1) the claims are barred by the applicable statute of limitations; 2) the claims are barred because a written contract precludes the applicability of the cause of action; and 3) that there is no evidence the "money" at issue belongs to the Plaintiffs. Obviously, the Plaintiffs disagree with all of these contentions; so the Court will address them one at a time starting with the RICO claim.

### A.    RICO — 18 U.S.C. §§ 1962(c) and (d)

The Plaintiffs have brought allegations under two sub-sections of the RICO statute. Those sub-sections are as follow:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions
>
> of subsection (a), (b) or (c) of this section.

18 U.S.C. §1962 (c) and (d).

6

RICO provides pertinent definitions to guide its interpretation.  Several are relevant here.

In pertinent part, they are:

(1) "racketeering activity" means ... (B) any act which is indictable under the following provisions of title 18 ... section 1341 (relating to mail fraud);

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associate in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter, and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity

Another pertinent provision allows a private party to pursue a RICO cause of action.

Section 1964(c) states:

(C) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.  The exceptions contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case that statute of limitations shall start to run on the date on which the conviction becomes final.

Several principles derived from controlling case law inform this Court's analysis.  First, the mail fraud statute (18 U.S.C. § 1341) applies to anyone who knowingly causes to be delivered by mail anything for the purpose of executing any scheme or intention to defraud.  *United States v. Whitfield*, 590 F.3d 325, 355 (5th Cir. 2009).  An injured party must show the violation was the "but for" and "proximate cause" of the injury.  *Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639, 654 (2008).  Generally, in cases of mail fraud, reliance need not be proven.  *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 676 (5th Cir. 2015).

7

As noted above, an enterprise may be made up of individuals "associated in fact although not a legal entity." An "associated in fact enterprise" 1) must have an existence separate and apart from the pattern of racketeering, 2) must be an ongoing organization, and 3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making process. *Calcasicu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1461 (5th Cir. 1991). While this routinely presents a barrier, here it is not a problem because the Complaint alleges that the Clinic, itself, is the enterprise.

With these general principles in mind, the Court reviews the actual allegations made by the State Farm entities. As noted, they alleged in their § 1962(c) cause of action that the Clinic is the enterprise and that Drs. Sparrow and Chin are either associated with or employed by the Clinic/enterprise. They further allege that the Clinic's affairs are conducted through a pattern of racketeering through the creation and presentation of fraudulent bills and other documents for medical services that were either not legitimately performed or were not medically necessary. In turn, these fraudulent documents caused the Plaintiffs to mail the settlement checks. (Doc. No 1, p. 36). The RICO causes of action are alleged solely against the Defendant Doctors.[1]

Separately, the Plaintiffs allege the doctors conspired to conduct the affairs of the Clinic/enterprise through a pattern of racketeering consisting of repeated mail fraud violations (Doc. No. 1, p. 38). More specifically, they allege the doctors' acts of conspiracy involved the submitting (or assisting in submitting) fraudulent bills and related documentation which, in turn, resulted in the Plaintiffs mailing settlement checks.

---

[1] The only cause of action brought against all Defendants is the common law claim for "money had and received."

1. A Discernable Proximately Caused Injury

A civil action under RICO may be brought by "[a]ny person injured in his business or property by reason of violation of" RICO's substantive provisions. *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting 18 U.S.C. § 1964(c)). Thus, a RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property *by reason* of the conduct constituting the violation. *Sedima, S.P.R.L. v. Imrex Co, Inc.*, 473 U.S. 479, 496 (1985) (emphasis added). To establish that an injury came about "by reason of" a RICO violation, a plaintiff must show that a predicate offense "not only was a 'but for' cause of his injury, but a proximate cause as well." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).

"In a string of cases, the Supreme Court has made it clear that proximate causation is lacking when the alleged harm is distinct from the alleged RICO violation." *Allstate Insurance Company v. Benhamou*, 190 F.Supp.3d 631, 643 (S.D. Tex. 2016) (citing *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 10-11 (2010) and *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460-61 (2006)).[2]

Defendants claim that the Plaintiffs cannot raise a fact issue that they have actually suffered any discernable, non-speculative "injury" that was proximately caused by the alleged racketeering actively and therefore, it lacks standing to assert a RICO claims under 18 U.S. C. § 1962(c). (Doc. No. 129, p. 11). Their arguments are based upon the assertion that Plaintiffs have no proof of causation, damages, or reliance. *Id.* at 19. The gist of Defendants' legal argument is that the Plaintiffs cannot establish (or in this context raise a fact issue) either the "but-for" causation or the "proximate cause" requirement with respect to their claimed injuries. The underlying factual basis

---

[2] The Court quotes here in length and later in the opinion from the opinion written by its predecessor in *Allstate Insurance Co. v. Benhamou*, 190 F.Supp.3d 631 (S.D. Tex. 2016). Since these quotes are merely setting out generally well-understood legal principles, the Court see no need for specific quotation marks or page cites.

of this contention consists of three parts. First, Defendants claim that Plaintiffs must prove that they would not have paid the claim *but for* Defendants' billing for unreasonable or medically unnecessary services. Second, they argue that State Farm has no evidence that the claimants (and their lawyers) would have accepted any lesser settlement amount. Finally, they contend that Plaintiffs have no evidence that anyone relied upon the fraudulent invoices. Defendants concede that Plaintiffs need not demonstrate their own reliance, but they interpret the *Bridge* opinion as requiring reliance by *"someone." Bridge*, 553 U.S. at 658.

Plaintiffs, while conceding that it is their burden to raise an issue of material fact as to causation, point out that the law does not require that the conduct be the sole cause—it need only be a substantial cause. They rely heavily on the Fifth Circuit analysis in *Plambeck*—a case with a somewhat similar factual background. *See Allstate v. Plambeck*, 802 F.3d 665 (5th Cir. 2015). Citing *Plambeck*, Plaintiffs contend they need only demonstrate an issue of material fact that 1) Defendants' fraudulent conduct was a substantial factor in causing Plaintiffs' harm; 2) Plaintiffs were the targets of the scheme; 3) there was a direct relationship between the misconduct and the harm and that they were not harmed by some wild caprice of chance.

The Court finds that both sides are partially correct and both have set out certain "elements" that are not really elements of any known cause of action. For example, Defendants claim that Plaintiffs must prove they would not have settled the claims in question *but for* Defendants' conduct. This Court disagrees that the Plaintiffs have to prove that they would not have settled the claims. Plaintiffs must prove that they would not have paid as much as they did but for Defendants' conduct. On the other hand, this Court does not find the level of comfort that Plaintiffs seem to find in the *Plambeck* court's use of the phrase "caprice of chance." It is no more than a catchy turn of phrase. It does not eliminate the need for the proof of proximate cause. Further, the mere

10

fact that the *Plambeck* court found the plaintiffs in that case satisfied their burden of proof does not automatically equate to a finding in this case that such evidence exists merely because the allegations are similar. The parties spend an inordinate amount of ink arguing over the concept of reliance. The Defendants' concede that the Plaintiffs need not rely on their representations, but argue that someone must have. Additionally, they postulate that Plaintiffs in an adversarial context cannot rely on their representations as a matter of law. *See, e.g. Davis v. Tex. Farm Bureau Ins.*, 470 S.W.3d 97, 109 (Tex. App.—Houston [1st Dist.] 2015, no pet.)

These two positions have problems that are immediately evident. First, as a general proposition, even if the insurance company involved did not rely on the accuracy of the bills (and medical records), the claimant and his/her attorney, unless they are co-conspirators in the fraud, do. The claimants are seeking medical treatment. They are relying on the judgment and accuracy of the medical professionals involved. In the usual case, they do not diagnose their own condition; nor do they prescribe the treatment. Further, they neither prepare the medical bills or the records nor do they have any input into their contents. They rely on the medical professionals involved to provide treatment that complies with the standard of care and to document that treatment in a professional and accurate manner. The attorneys involved rely on those bills in presenting their clients' claims. Thus, in a normal case – even if the opposing side is skeptical of treatment provided or the medical bills provided or both – there are clearly others who do rely on their accuracy.

Again, addressing the "normal" situation, if the patients and attorneys did not rely on these records—in other words, knew they were inaccurate—and they presented these records to the opposing party's insurance company, then all parties involved (the doctors, the patients and the

attorneys) would be committing fraud and the doctor and attorney would be guilty of unethical conduct and possibly criminal conduct.[3]

This Court reminds all involved that a treating physician is not a legal advocate. Even if he or she is later designated as a witness, a doctor must be truthful and accurate. Any lesser standard would not only undermine the judicial process, but also undermine the faith and respect that the public holds in two of this country's most important professions.

Having set out these general principles, the question of their applicability here and the actual resolution of the pending motions depends on the prevailing RICO law and the summary judgment evidence.

The Plaintiffs' response to Defendants' motion makes a point of stating "... causation inquiries are typically questions of fact for the jury to decide (citing authority)." (Doc. 146, p. 24). This is usually true. In the usual case, the non-movant in response to a summary judgment motions based upon causation usually sets out that evidence that establishes a material issue of fact. Plaintiffs in this case, rather than give the Court a hint of what this controverting evidence might be, sends the Court on a treasure hunt. While they refer this Court to certain exhibits, they do not describe what this Court should be looking for or specifically where it could be found.

That being said, the Court finds that there is evidence that raises a fact issue on the pertinent causation issues regardless as to how they are framed with respect to the following claim numbers:

1. 534042R83
2. 534301R49
3. 53795R178
4. 538B38054
5. 538B36325
6. 53876Z922
7. 53694T538
8. 538T73214

---

[3] The logical result of Defendants' argument would be that in an adversarial situation, a physician has a license to be dishonest and commit fraud without consequence. This has never been the case.

9. 53975B823
10. 53982G721
11. 538H97142
12. 53827F925
13. 5315573H8
14. 5302686W6
15. 53885G845
16. 537T45899
17. 53711R457
18. 531041W81

With regard to the remaining claims out of the 27 currently at issue, the Court grants the Defendants' motion for summary judgment due to the lack of causation "but for" and proximate cause. Regardless of which standard is used the Plaintiffs have failed to raise an issue of material fact as to the other nine claims.[4]

        2.      Evidence that the Doctors "conducted the affairs" of the Clinic or that a conspiracy existed.

Defendant Doctors also claim that they are entitled to a summary judgment because there is no evidence that either was involved in conducting the affairs of the Clinic (enterprise). They correctly argue that the Supreme Court has held that one cannot be liable under § 1962(c) unless one has participated in the operation or management of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 182 (1993). They also correctly maintain that neither the mere provision of goods or services (in this case services) or mere existence of a business relationship does not impose RICO liability. *Allstate Ins. Co. v. Benhamou*, 190 F.Supp.3d 631, 656 (S.D. Tex. 2016).

Plaintiffs respond, first, that a defendant need not possess a title or label as a manager or supervisor to qualify as such under RICO. They emphasize that it was the doctors' medical

---

[4] This Court assumes these numbers refer to individual claims – thus leaving nine claims without controverting summary judgment evidence. Neither side has explained to the Court how the claims are numbered or what these numbers represent. To the extent these claim numbers cover more than one claim – the Court denies the motion as to all claims covered by that number. Thus, it is conceivable there may not actually be nine claims as to which the Court has granted judgment.

treatment that was the lynchpin of the alleged scheme. Next, they refer this Court to the decision in *State Farm Automotive Ins. Co. v. Punjwani*, 2019 WL 7372215 at *4 (S.D. Tex. Dec 31, 2019) and other cases with somewhat related allegations. *Punjwani*, while informative, does not control the situation here. First, the question there was not presented in the Defendants' actual motion to dismiss, but was raised in a reply brief. More importantly, it was raised in the context of a motion to dismiss, which merely analyses the allegation, not a summary judgment that actually focuses on the evidence. In that case, the judge concluded that the allegations were sufficient because the doctor was the individual that performed the unnecessary medical procedure and made the medical decisions that were central to the scheme. Further, he was paid on a fixed fee basis for each evaluation and injection he performed.

In order to determine what the phase "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs" in 18 U.S.C. § 1962(c) means, the Supreme Court first examined the meaning of the terms "conduct" and "participate." *Reves v. Ernst & Young*, 507 U.S. 170, 177-79 (1993). The Supreme Court concluded that "conduct," both as a noun and as a verb in the subsection, requires some level of direction while the word "participate" requires some part in that direction. *Id*. at 179. Although some part in directing the enterprise's affairs is required for liability, the Court likewise explained that the use of the words "participate" and "directly or indirectly" indicate that RICO liability is not limited to those with primary responsibility for the enterprise's affairs or a formal position in the enterprise. *Id*. Thus, lower rung participants in the enterprise who are under the direction of upper management as well as those "associated with" the enterprise who exert control over it can be liable. *Id*. at 184.

> Although one need not be a ringleader, the Fifth Circuit has made clear that a defendant must have some supervisory involvement in an enterprise in order to satisfy § 1962(c)'s conduct or participate requirement. *Plambeck*, 802 F.3d at 675 (acknowledging that defendants had limited roles but nevertheless finding they "participated in managing the

enterprise with their supervisory roles in their respective parts of the scheme."). Thus, simply providing goods or services that ultimately benefit the enterprise will not subject on e to liability. *In re MasterCard Intern. Inc., Internet Gambling Litig.*, 132 F.Supp.2d 468, 489 (E.D. La. 2001), *aff'd sub nom. In re MasterCard, Inc.*, 313 F.3d 257 (5th Cir. 2002) (quoting *Amsterdam Tobacco, Inc. v. Philip Morris, Inc.*, 107 F.Supp.2d 210 (S.D.N.Y. 2000)) (internal quotations marks omitted). Nor will merely having a business relationship with a RICO enterprise, *Compass Bank v. Villarreal*, No. 10-8 2011 WL 1740270, at *13 (S.D.Tex. May 5, 2011) (collecting cases), or simply contributing to the enterprise "with the knowledge of or willful disregard" for the other defendants' supposed criminal activity. *Gonzalez*, 2011 U.S. Dist. LEXIS 16963, at *21. Even the receipt of funds or materials on its own, without more, will not establish that a defendant actually operated the scheme to obtain those funds or materials. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012).

*Benhamou*, 190 F.Supp.3d at 655.

The Defendant Doctors here (Drs. Sparrow and Chin) were the sole medical providers that performed the allegedly unnecessary services. No other individuals were involved in the decisions as to the examinations performed, the diagnoses made, or the treatment. Neither doctor was supervised by any clinical personnel and both knew the Clinic was billing for their services. By virtue of their position, each doctor was in charge of their record keeping/documentation (even it if was delegated to someone else) and each made their own diagnoses and their own treatment plan and recommendations.

Given these facts and the experts' testimony concerning the fraudulent or sub-standard treatment, this Court finds there is sufficient evidence to raise a fact issue as to their role. First of all, the Court notes that 18 U.S.C. § 1962(c) does not require that a defendant be the master mind or manage the enterprise or the scheme. It only requires that a person "conduct or participate, directly or indirectly" "in the conduct of the enterprise's affairs." The doctors' participation here was key. The alleged scheme could not have been successful without them. Moreover, according to their own brief, the Defendant Doctors were not supervised or told what to do. They made the

15

very medical decisions over which the Plaintiffs are basing their claims. That being the case, they cannot be considered low level employees or mere service providers.

Moreover, the Plaintiffs have proffered evidence that the Defendant Doctors have committed over 200 medically unnecessary and/or medically unsupportable procedures for which the Clinic billed. Finally, the bills (or at least some of them), while they were key to trigger payment, were created using the Defendants' names. While both Doctors deny having any involvement with the bills or the billing process, clearly they allowed the services to be billed using their names.

In order to demonstrate a RICO conspiracy under § 1962(d), a plaintiff must demonstrate that (1) two or more people agreed to commit a substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the RICO offense. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010). In the RICO criminal context, a person need not commit or agree to commit predicate acts to be held liable. *Salinas v. United States*, 522 U.S. 52, 63-64 (1997). Nevertheless, to establish civil liability for RICO conspiracy, a claimant must allege injury from an act that is independently wrongful under RICO. *Beck v. Prupis*, 529 U.S. 494, 507 (2000). Thus, when a plaintiff fails properly to allege a violation of § 1962(c), his § 1962(d) claim is without basis. *Bonton v. Archer Chrysler Plymouth Inc.*, 889 F.Supp. 995, 1005 (S.D. Tex. 1995); *Allstate Ins. Co. v. Donovan*, 2012 WL 2577546, at *15 (S.D. Tex. July 3, 2012); *North Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 2011WL 5325785, at *15, *aff'd sub non N. Cypress Med Ctr. Operating Co., Ltd. v. CIGNA Healthcare*, 781 F.2d (5th Cir. 2015).

This Court cannot hold as a matter of law that no conspiracy existed. There were multiple individuals and at least one, if not two entities, involved in the alleged activities that comprise the

16

alleged RICO conspiracy. There is adequate evidence to justify the need for a decision by the finder of fact.

3.     The Existence of Mail Fraud

The Defendant Doctors contend that they should prevail as a matter of law on the RICO claims because there is no evidence of mail fraud. Mail fraud is the sole § 1961 predicate act that Plaintiffs plead. If no mail fraud occurred, then no RICO claim can stand, regardless of whether pleaded under § 1962 (c) or (d).   Defendants claim no mail fraud existed for two reasons: a) State Farm cannot raise a fact issue as to a false or fraudulent representation; and b) it cannot raise a fact issue as to intent to deceive. The Court will address them together.

The Defendants acknowledge in their motions that Plaintiffs will respond to the motion with evidence containing expert testimony that the treatment they provided was unneeded, improperly supported and was rendered improperly. Plaintiffs have, indeed, responded with just such evidence. Defendants, however, claim that this evidence of improper care does not equate to fraud. If that were all of the evidence, Defendants would be right.

Secondly, Defendants argue that the Plaintiffs have no evidence that either Defendant had the requisite intent to deceive. To support these claims, they point out that the Defendant Doctors had no involvement in the actual billing, never received any instructions or directions from Clinic personnel as to the medical care in question. Further, neither doctor had any role in running the Clinic, funding the Clinic, or recruiting its patients. Moreover, the doctors claim that not only did they not have any operational role; they did not even have any knowledge of the Clinic's operations.

Plaintiffs have not responded with any evidence that could be described as direct evidence—although in most cases there is seldom direct evidence of intent or of the requisite

17

knowledge that a representation was false at the time the representation was made. Plaintiffs respond by pointing to the evidence that the medical records and bills in over 450 cases are false or indicative of unnecessary treatment and by arguing that this is circumstantial evidence that the doctors were participating in a scheme to defraud rather than just a consistent inability to accurately diagnosis and treat. Moreover, their expert witness concluded each of over 250 charts contained the same diagnosis, the same prognosis and the same treatment. There is also evidence that their co-workers at the Clinic coordinated with various Plaintiffs' attorneys as to the care and treatment and billing of the patients. Plaintiffs also point out that the two doctors used a similar protocol that they instituted and for which the Clinic was compensated by using bills that purported to seek compensation for fraudulent and/or unnecessary treatment.

This Court finds this is sufficient circumstantial evidence from which a finder of fact would be justified in concluding that the necessary fraudulent intent was present. Summary judgment is therefore denied as to Plaintiffs' RICO claims.

## B. Money Had and Received

All Defendants move for summary judgment on Plaintiffs' claims for money had and received. First, they contend that the claim is barred by the applicable statute of limitations. Next, they contend that the claim is barred because there is a written contract that precludes such a claim. Finally, they argue that any money held by the Defendants could not possibly belong to Plaintiffs.

### 1. Statute of Limitations

Defendants argue (and Plaintiffs concede in their response) that the applicable statute of limitations for a money had and received claims is two years. *Merry Homes v. Dao* 359 S.W.3d 881, 882 (Tex. App.—Houston [14th] 2012, no pet.) citing *Elledge v. Fribery–Cooper Water Supply Corp.*, 240 S.W.2d 869, 871 (Tex. 2007); *Pollander v. Hanschen*, 315 S.W.3rd 636, 641

18

(Tex. App.—Dallas 2010, no pet.) This case was filed on July 23, 2020. Therefore, the controlling date is July 23, 2018. Thus, any claims maturing before that date are barred. Since State Farm paid all but four claims of the 27 claims under consideration prior to July 23, 2018, Defendants conclude those 23 are barred.

Plaintiffs, in response, concede that the two year statute of limitations applies and that it normally begins to run when the payment is made or, if paid indirectly, it begins to run when the money was received. *Tanglewood Terrace, Ltd. v City of Texarkana*, 996 S.W.2d 330, 337 (Tex. App.—Texarkana 1999, no pet.) Plaintiffs claim that the Defendants received the money indirectly and there does not appear to be any real dispute about this. It seems uncontroverted that the sums paid first were to the lawyer/client and then to the Clinic. Plaintiffs claim the vast majority of the payments were received by the Defendants within the two year period.[5] Neither side has provided specifics as to the individual payments and their dates.

In addition to the claim that Defendants have failed to establish their limitations defense as a matter of law, the Plaintiffs claim they are entitled to rely on the application of the discovery rule in a fraudulent claim. They contend to prevail on their summary judgment, the Defendants needed to prove as a matter of law that they Plaintiffs, in the exercise of reasonable diligence, should have discovered the mail fraud.

The Supreme Court of Texas has squarely placed upon the defendant the burden of negating a discovery rule claim when moving for a summary judgment on the affirmative defense of statute of limitations.

> A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2)

---

[5] The Plaintiffs claim that the big pay-off for the Defendants came in 2019 when Holdco sold Memorial and received a substantial sum that was only made possible by the profitability of the Clinic which was made possible by the alleged RICO scheme. While this may be true, the Court questions whether Plaintiffs could lay claim to these sums.

negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury. If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations.

*KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 747 (Tex. 1999); *see also Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n. 2 (Tex. 1988).

As noted above, the parties disagree on whether the discovery rule tolls the statute of limitations. Defendants, in their motion for summary judgment, maintain that the discovery rule does not toll the statute of limitations here because as early as December 30, 2016, State Farm was aware of concerns regarding the medical necessity of the services billed through Complete Pain.[6] By contrast, State Farm contends that the discovery rule tolls the statute of limitations because it had not discovered, or concluded, that Defendants' conduct rose to the level of fraud until much later in its investigation.

As noted, the burden of proof of this affirmative defense is on the Defendants. That being the case, it is their burden to negate the discovery rule claim as a matter of law. As noted, a cause of action for money had and received accrues when the funds are transferred. *See Tanglewood Terrace, Ltd. v. City of Texarkana* at 337 (citing *Amoco Prod. Co. v. Smith,* 946 S.W.2d 162, 163-64 (Tex. App.—El Paso 1997, no writ). Nevertheless, the date the legal injury is sustained is not necessarily the date the claim begins to accrue. *See TIG Ins. Co. v. Aon Re, Inc.,* 521 F.3d 351, 357 (5th Cir. 2008) ("Under Texas law, the discovery rule is an exception to the general rule that a cause of action accrues when a wrongful act causes some legal injury."). Under the discovery rule,

---

[6] To support this proposition, they cite this Court to Exhibit A-3 at pp. 33-34 and A-5 at pp. 51:12-52:16. The Court's copy of Exhibit A-5 contains portions of a deposition of Michelle Yap. There is not enough context provided to the Court as to what the December 30, 2016 memo actually was, what it involved or what it concluded, but it does establish that by December 30, 2016, State Farm was concerned about the medical necessity of the services being provided by the Clinic. Moreover, by July 2017, outside attorneys had been engaged in this investigation.

the limitations period may be tolled if the injury is inherently undiscoverable, meaning "it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V. v. R. V.,* 933 S.W.2d 1, 7 (Tex.1996). If the discovery rule is applicable, the statute of limitations will run "not from the date of the [defendant's] wrongful act or omission, but from the date the nature of the injury was or should have been discovered by the plaintiff." *Weaver v. Witt*, 561 S.W.2d 792, 793–94 (Tex. 1977).

State Farm argues that Defendants have not met their summary judgment burden above. State Farm contends that the injury here is "inherently undiscoverable" because it is premised on fraudulent conduct that could not have been discovered. State Farm notes "opening an investigation into suspected fraud and retention of counsel to assist in that investigation does not equate to discovery of fraud." (Doc. No. 146 at 45). Thus, State Farm maintains that there is a genuine issue of fact as to when it became aware of the alleged fraud, and consequently, when it became aware of the nature of the injuries giving rise to the money had and received claims.

The Court finds that State Farm pleaded that the discovery rule applies, and that Defendants have not, as a matter of law, negated the application of the discovery rule. *See Taylor v. Trevino*, 569 F. Supp. 3d 414, 442 (N.D. Tex. 2021) (denying summary judgment on plaintiff's money had and received claim because the defendant had not established as a matter of law when plaintiff discovered or should have discovered the nature of its injury). Indeed, the factual record here demonstrates the existence of a factual dispute regarding when Plaintiffs discovered or should have discovered the nature of the injuries.

Some of the summary judgment evidence shows that on May 8, 2017, Plaintiffs opened a project to investigate a potential "issue of concern" regarding the necessity of treatment rendered by Complete Pain. (Doc. No. 146, Ex. 54). State Farm Project specialist Michelle Yap managed

21

the Complete Pain investigation, until she left State Farm in late 2018. She testified that, at the time of her departure, her investigation was "ongoing" and she had not reached any conclusion regarding: (1) whether Complete Pain's medical records "were based on templates"; (2) the "necessity of services" provided by Complete Pain; (3) any "improprieties with the billing practices" of Complete Pain; or (4) whether Complete Pain had committed fraud. (Doc. No. 146, Ex. 55, at 71:25; 72:1-4; 112:24-25; 113:1-16; 132:23-25; 133:1-5). According to Plaintiffs, their final determination that Defendants were engaged in fraud occurred when their legal department authorized the filing of the lawsuit, which was shortly before the actual filing on July 23, 2020. (Doc. No. 146, Ex. 58, at 33:17-25; 35:8-12; 85:15-23; 127:1-16.).

The Court finds that Defendants have not met their burden of negating the discovery rule as a matter of law and establishing that there is no genuine issue of material fact as to when State Farm discovered or should have discovered the nature of its injuries. The evidence presented by State Farm is enough to create a fact issue and survive summary judgment on this issue.

This Court also finds, given the lack of specific proof as to each individual claim and the lack of specificity as to the 2016-20 investigations contained in the summary judgment evidence, this Court cannot rule in Defendants' favor as a matter of law. Regardless of whether the discovery rule applies, the application of the statute of limitations in this case seems to have a plethora of fact issues.

2. The Existence of a Written Contract

Defendants claim that the existence of a written agreement precludes the application of an equitable doctrine such as "money had and received." They use as authority the well-established rule in Texas that the existence of a written contract precludes a claim for equitable or quasi-contractual relief. When a valid contract covers the subject matter of the parties' dispute, there generally can be no recovery under a quasi-contractual theory. *Fortune Production Co. v Conoco Inc.*, 52 S.W. 3d 671, 684 (Tex. 2000). An action for money had and received is just such a quasi-contractual claim. *Humana, Inc. v Shrader& Associates, LLP*, 584 B.R. 658, 686 (S.D. Tex. 2018). This Court cannot find fault with the Defendants' premise. Even the Plaintiffs seem to acquiesce in the general application of the principle that a written contract precludes a recovery on a cause of action based upon a quasi-contractual or equitable basis.

The Plaintiffs contend, however, and this Court agrees, that there is no contract (at least one that has been included in the summary judgment evidence) upon which to base such an argument. The sole "contract" attached is a release (signed by Ashley N. Laneros and Jose E. Landeros) between the Laneros and Alan M. Roco pertaining to an accident that occurred on September 15, 2016. (Def. Ex. A-11). Neither the Plaintiffs nor the Defendants are parties to this release. The general rule in Texas is that quasi-contractual claims are barred if the claim is brought by a party to a contract that covers the subject matter of the suit extends not only to the signatories to the contract, but also where a plaintiff seeks to recover from a third party who benefitted from the contract. *Conoco Phillips Co. v. Koopmann*, 2016 WL 2967689 at *14 (Tex. App.—Corpus Christi May 19, 2016, pet. denied). It is not clear, as a matter of law, that the Defendants benefitted from this contract. Certainly, the claimant (their patient or former patient) benefitted because his/her claims was paid, but it is unclear if any of the Defendants here benefitted from that release.

23

First, it does not mention them and does not release them in any fashion. The Defendant Doctors were paid regardless of any payment to the claimant. The remaining Defendants were allegedly providing services under a letter of protection from the attorney. If this is the case, they would get paid regardless of whether a successful settlement was concluded. If true, they would not receive any benefit from the written contract/release. That being the case, this Court cannot grant them a judgment as a matter of law.

        3.      Plaintiffs Cannot Prove the Funds "Had and Received" Belong to It

Defendants also move for summary judgment based upon its claim that Plaintiffs are unable to establish their claim that the funds in question belong to them. This argument is based upon the manner in which the Clinic received the funds that it did. First, the funds were paid to the underlying claimant in exchange for that claimant releasing his/her claims. Then, either the claimants or their attorney paid the Clinic. Defendants point out correctly that the general rule in Texas is that title to money transfers when it is exchanged for valuable consideration, which in this instance would be the execution of the release. *H.E.B, LLC v. Ardinger*, 369 S.W.3d 496, 508 (Tex. App.—Fort Worth 2012, no pet.). Second, Defendants argue that the Plaintiff cannot point to any specific amount of funds that are being claimed. Finally, Defendants point out that as to MMRI and the Defendant Doctors, this cause of action fails because these defendants never received any funds from the Plaintiffs.

Plaintiffs respond that Defendants' argument ignores the established law in this Circuit.

[T]his Court has permitted insurance companies to recover money paid for fraudulent billing through money had and received claims. *See DAC Surgical Partners v. United Healthcare Servs., Inc.*, No. 4:11-CV-1355, 2019 WL 3252343, at *5 (S.D. Tex. July 7, 2019 (citation omitted) ("The amount that United overpaid based on Par and Euston's fraudulent misrepresentations belongs to United 'in equity and good conscience.'"); *Aetna Life Ins. Co. v. Won Yi*, No. H-14-900, 2019 WL 2355543, at *2 (S.D. Tex. June 4, 2019) (concluding that insurance company

24

met the requirements for money had a received claim by showing that the defendants were paid money for dishonest claims).

*Punjwani*, 2019 WL 7372215, at \*5.

Plaintiffs further point out that the money can be traced from State Farm to the Claimants and their attorneys to the Clinic and then it passed to MMRI. MMRI apparently kept all of the Clinic's profits. This Court finds these facts raise a fact issue as to the Clinic and MMRI, but not as to the Defendant Doctors. Plaintiffs admit that the doctors were "paid for their services at the time of service." (Doc. No. 146, p. 49).

This Court is not clear that this concession is accurate as to both Dr. Sparrow and Dr. Chin. Dr. Sparrow testified that at the time she was paid a flat rate based upon the procedure. (Doc. No. 129-2, p. 13). Dr. Chin testified he was paid a $300,000 annual salary by Texas Anesthesia Associates PLLC. (Doc. No. 129-2, pp. 182-83); Doc. No. 141-18, pp. 5, 7; Doc. No. 141-32, pp. 2-19). Dr. Chin had no understanding how Texas Anesthesia was reimbursed by the Clinic (Doc. No. 129-2, p. 183). Nevertheless, it is uncontroverted that neither doctor ever received funds directly or indirectly from the Plaintiffs. Furthermore, the funds the doctors received never came through the Clinic or MMRI as a result of a payment by either Plaintiff.

That being the case — while this Court denies the motion for summary judgment on the "money had and received" claims as to the Clinic and MMRI—it grants the motion as to Drs. Chin and Sparrow.

## IV. Conclusion

The Court grants the Defendants' Motion for Summary Judgment with regard to the "money had and received" cause of action as it applies to Dr. Alj Florence Sparrow and Dr. See Loony Chin. It denies the Motion as to as to the "money had and received" cause of action as it

applies to Compete Pain Solutions LLC n/k/a Complete Pain Solutions PLLC and MMRI Holdco LLC n/k/a MRI Holdco Rollover LLC.

The Court grants the Motion for Summary Judgment as to RICO claims brought against Drs. Chin and Sparrow as to all 27 claimants in dispute except for those claimants represented by claim numbers 1) 534042R83; 2) 534301R49; 3) 53795R178; 4) 538B38054; 5) 538B36325; 6) 53876Z922; 7) 53694T538; 8) 538T73214; 9) 53975B823; 10) 53982G721; 11) 538H97142; 12) 53827F925;      13) 5315573H8;  14) 5302686W6;  15) 53885G845;  16) 537T45899; 17) 53711R457; and 18) 531041W81. Thus, the Plaintiffs may continue with their RICO claims for these listed claim numbers only.

SIGNED on this ___18th___ day of July 2024.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE